UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.                                          18-CR-217 (KMW)

GORDON FREEDMAN, et al.,

                    Defendants

---

**MEMORANDUM OF LAW IN SUPPORT OF DR. TODD SCHLIFSTEIN'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR PRE-TRIAL RELIEF**

Alex Spiro
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
212-849-7000
alexspiro@quinnemanuel.com

*Attorney for Todd Schlifstein*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ..........................................................................................................2

    A.   Dr. Schlifstein's Prescription of Subsys Following Its Introduction to the Market .............................................................................................................2

    B.   Dr. Schlifstein's Participation in the Insys Speaker Program .....................3

    C.   The Government's Wide-Ranging Indictment .............................................4

ARGUMENT ...............................................................................................................5

I.     THE INDICTMENT AGAINST DR. SCHLIFSTEIN SHOULD BE DISMISSED .........6

    A.   The Conspiracy Counts Should Be Dismissed Because the Indictment's Allegations Do Not Establish an Agreement .................................................6

    B.   Counts One and Two Should Be Dismissed Because the Allegations Do Not Show Dr. Schlifstein Received Remuneration in Exchange for Prescriptions ................................................................................................7

    C.   Count Three Should Be Dismissed Because The Indictment Presents No Factual Allegations That Dr. Schlifstein Intended To Or Actually Did Defraud Any Patient ..................................................................................10

    D.   Count Eight Should Be Dismissed Because The Allegations In The Indictment Do Not Establish That Dr. Schlifstein Provided Patient Information To An Unauthorized Person ............................................................13

II.    IN THE EVENT THE INDICTMENT IS NOT DISMISSED, DR. SCHLIFSTEIN IS ENTITLED TO A BILL OF PARTICULARS, *BRADY* MATERIAL, A PRETRIAL DISCLOSURE SCHEDULE, AND SEVERANCE ..........14

    A.   The Government Should Provide a Bill of Particulars ...........................14

    B.   The Government Should Provide *Brady* Material ................................16

    C.   The Court Should Set a Scheduling Order Consistent With the Complexity of This Case .............................................................................................17

    D.   Dr. Schlifstein's Trial Should Be Severed From His Co-Defendants' Trial .........17

CONCLUSION.............................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACA Int'l v. FCC,*
   885 F.3d 687 (D.C. Cir. 2018) ............................................................................ 14

*Brady v. Maryland,*
   373 U.S. 83 (1963) ........................................................................................... 17

*Neder v. United States,*
   527 U.S. 1 (1999) ............................................................................................. 12

*Skilling v. United States,*
   561 U.S. 358 (2010) ................................................................................... 11, 13

*State v. MedImmune, Inc.,*
   --- F. Supp.3d ---, 2018 WL 6567648 (S.D.N.Y. Sept. 28, 2018) ..................... 8

*Strickler v. Greene,*
   527 U.S. 263 (1999) ......................................................................................... 17

*United States v. Barnes,*
   158 F.3d 662 (2d Cir. 1998) ............................................................................ 16

*United States v. Bin Laden,*
   92 F. Supp. 2d 225 (S.D.N.Y. 2000) ............................................................... 16

*United States v. Bortnovsky,*
   820 F.2d 572 (2d Cir. 1987) ............................................................................ 16

*United States v. Davidoff,*
   845 F.2d 1151 (2d Cir. 1988) .......................................................................... 16

*United States v. Gonzalez,*
   686 F.3d 122 (2d Cir. 2012) .............................................................................. 5

*United States v. Halloran,*
   821 F.3d 321 (2d Cir. 2016) ..................................................................... 11, 13

*United States v. Jackson,*
   345 F.3d 59 (2d Cir. 2003) .............................................................................. 17

*United States v. Jain,*
   93 F.3d 436 (8th Cir. 1996) ....................................................................... 12, 13

*United States v. Klein*,
     476 F.3d 111 (2d Cir. 2007) ............................................................. 12

*United States v. Krikheli*,
     461 Fed.Appx. 7 (2d Cir. 2012) ......................................................... 8

*United States v. Milovanovic*,
     678 F.3d 713 (9th Cir. 2012) ............................................................. 11

*United States v. Nayak*,
     769 F.3d 978 (7th Cir. 2014) ............................................................. 11

*United States v. Pierce*,
     224 F.3d 158 (2d Cir. 2000) ............................................................. 12

*United States v. Pirro*,
     212 F.3d 86 (2d Cir. 2000) ......................................................... 5, 6, 14

*United States v. Rajaratnam*,
     No. 09-CR-1184, 2010 WL 2788168 (S.D.N.Y. July 13, 2010) ........... 16

*United States v. Rodriguez*,
     496 F.3d 221 (2d Cir. 2007) ............................................................. 17

*United States v. Rosenblatt*,
     554 F.2d 36 (2d Cir. 1977) ................................................................. 6

*United States v. Rybicki*,
     354 F.3d 124 (2d Cir. 2003) ......................................................... 11, 12

*United States v. TEVA Pharm. USA, Inc.*,
     No. 13 CIV. 3702(CM), 2016 WL 750720 (S.D.N.Y. Feb. 22, 2016) ..... 8

*United States v. Torres*,
     604 F.3d 58 (2d Cir. 2010) ................................................................. 6

*United States v. Walsh*,
     194 F.3d 37 (2d Cir. 1999) ................................................................. 5

## Statutes and Rules

18 U.S.C. § 1346 ................................................................................... 11

18 U.S.C. § 3500 ................................................................................... 18

42 C.F.R. § 1001.952 ............................................................................ 10

42 U.S.C. § 1320a–7b ....................................................................... 8, 10

42 U.S.C. § 1320d-6 ................................................................................................ 14

45 C.F.R. § 160.103 ................................................................................................ 14

45 C.F.R. § 164.506 ................................................................................................ 14

Fed. R. Crim. P. 7 .................................................................................................... 5

Fed. R. Crim. P. 8 .................................................................................................. 18

Fed. R. Crim. P. 9 .................................................................................................. 16

Fed. R. Crim. P. 12 ............................................................................................. 1, 5

Fed. R. Crim. P. 14 .............................................................................................. 19

Defendant Dr. Todd Schlifstein ("Dr. Schlifstein") respectfully submits this Memorandum of Law in support of his motion pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) to dismiss Count One (Conspiracy to Violate the Anti-Kickback Statute), Count Two (Violation of the Anti-Kickback Statute), Count Three (Conspiracy to Commit Honest Services Wire Fraud), and Count Eight (Wrongful Disclosure of Individually Identifiable Health Information) of the Indictment.

## PRELIMINARY STATEMENT

Dr. Schlifstein, a certified physician in physical medicine and rehabilitation, has spent his career helping patients who faced excruciating pain that many medications were insufficient to treat. In March 2012, after a decade of research and testing, a medication called "Subsys" became available following FDA approval. Subsys is a sublingual spray—sprayed underneath the patient's tongue—that assists patients in managing spikes in pain that "break through" the around-the-clock pain medication the patient is already taking.

After its release to the market, Dr. Schlifstein began prescribing Subsys to patients who needed it. Notably, Dr. Schlifstein did so prior to any involvement in the alleged kickback scheme contained in the Indictment related to Subsys (referred to in the Indictment as "the Fentanyl Spray"). But, as a result of Dr. Schlifstein's medical judgment that certain patients with breakthrough pain would benefit from Subsys, Dr. Schlifstein now stands accused of taking bribes and kickbacks as part of a wide-ranging Indictment, addressing the conduct of multiple defendants. Specifically, the Government accuses Dr. Schlifstein of accepting bribes and kickbacks from Subsys's manufacturer, Insys Therapeutics, Inc. (referred to as "Pharma Company-1"), delivered in the form of fees for speaker programs. But nothing is wrong with participating, and receiving remuneration for participating, in such educational programs discussing the merits of Subsys with

other healthcare professionals.  And the Government's own Indictment contradicts the charge that Dr. Schlifstein received any bribes or kickbacks in return for prescribing Subsys to any patient.

Indeed, all four charges against Dr. Schlifstein should be dismissed.  As to the conspiracy counts, Counts One and Three, the Indictment fails to allege any agreement to further illegal activity—and thus any conspiracy—between Dr. Schlifstein and Insys.  In this same vein, Count Two, which alleges a violation of the Anti-Kickback Statute, fails because the Indictment never alleges that Dr. Schlifstein's receipt of speaker fees in turn required Dr. Schlifstein to prescribe Subsys (and, indeed, Count One must be dismissed for this additional reason as well).  Count Three, conspiracy to commit honest services wire fraud, must be dismissed for the additional reason that the Indictment does not plead that Dr. Schlifstein intended to or actually did defraud any patient, or that he breached the duty of care owed to his patients.  The Indictment makes no effort to allege that Dr. Schlifstein's patients did not benefit from Subsys.  Finally, as to Count Eight, related to the wrongful disclosure of protected health information to an unauthorized person, the Indictment fails to allege sufficient facts to support its claim that Dr. Schlifstein wrongfully provided protected patient information to an unauthorized person.

The counts against Dr. Schlifstein in the Indictment should be dismissed.

## BACKGROUND

### A.    Dr. Schlifstein's Prescription Of Subsys Following Its Introduction To The Market

The conduct alleged in the Indictment centers on a drug called Subsys, which was manufactured, marketed, and sold by Insys Therapeutics, Inc.  Ind. ¶ 6.  The Food and Drug Administration ("FDA") approved Subsys in January 2012 for managing breakthrough pain in cancer patients.  Ind. ¶ 14.  In addition to the FDA-approved, or "on label," use of a drug, the FDA recognizes that approved drugs may have beneficial "off-label" uses.  *Understanding Unapproved*

*Use of Approved Drugs "Off Label"*, U.S. Food and Drug Administration (Feb. 5, 2018) https://www.fda.gov/forpatients/other/offlabel/default.htm ("[O]nce the FDA approves a drug, healthcare providers generally may prescribe the drug for an unapproved use when they judge that it is medically appropriate for their patient.").

Following FDA approval, Subsys entered the market in March 2012.  Ind. ¶ 14.  For doctors treating patients who suffered breakthrough pain that could not be controlled by around-the-clock pain medications, Subsys offered an important new tool:  Because it was sprayed underneath the patient's tongue, it could begin reducing pain quickly.

Dr. Schlifstein began prescribing Subsys to some of his patients in the months following its release.  Ind. ¶ 96.  The Indictment alleges that Dr. Schlifstein prescribed Subsys to nine of his patients before expressing interest in speaking to other doctors about Subsys as part of Insys's Speaker Program.  *Id.*  Because Subsys was classified as a Transmucosal Immediate Release Fentanyl ("TIRF") product, the FDA required doctors to enroll in its TIRF Risk Evaluation and Mitigation Strategy ("TIRF REMS") program, and to complete online training and testing, before they could prescribe Subsys to their patients.  Ind. ¶ 16.  The Indictment does not allege that Dr. Schlifstein failed to enroll in the program or complete the required training and testing.  The FDA also requires any patients who are prescribed a TIRF drug to enroll in the TIRF REMS program. *Id.*  The Indictment does not allege that any of Dr. Schlifstein's patients who were prescribed Subsys failed to enroll in the program.

### B.    Dr. Schlifstein's Participation In The Insys Speaker Program

Insys, as part of its role in marketing the drug, provided educational programs about Subsys, given by doctors with experience with the drug.  Ind. ¶ 2.  In exchange for providing these education programs, referred to as "Speaker Programs," the doctor would receive a stipend.   Ind. ¶ 28.  Such programs are a common way for doctors with real-world experience to educate and

inform their peers about the medicines they prescribe.  The group Pharmaceutical Research and Manufacturers of America established guidelines for Speaker Programs, which Insys—"like many other pharmaceutical manufacturers"—adopted.  Ind. ¶ 19.

According to the allegations, Dr. Schlifstein became interested in holding Speaker Programs of his own in October 2013, more than a year and a half after Subsys entered the market. Ind. ¶ 91.  At that point, Dr. Schlifstein already had been prescribing Subsys to his patients.  Ind. ¶ 96.

Dr. Schlifstein joined the Speaker Program in February 2014, Ind. ¶ 95, signing a Speaker Agreement that required him to continue to make prescribing decisions "solely in accordance with [his] independent judgment, . . . not [] affected by this Agreement, the payments made hereunder or the relationship created hereby."  Ind. ¶ 27.  Dr. Schlifstein held his first Speaker Program the following month.  Ind. ¶ 95.  Over the following six months, he is alleged to have spoken at 26 events.  Ind. ¶ 98.  During the same six-month period after he began his participation in the Speaker Program, his prescriptions of Subsys "did not increase substantially."  *Id.*

Approximately a year later, by the end of the second quarter of 2015, the total dosage of Subsys that Dr. Schlifstein allegedly prescribed had increased.  Ind. ¶ 105.  As the Indictment explains, a new patient starting on Subsys was always prescribed the lowest dose.  Ind. ¶ 17.  The doctor then increased the dose until determining the correct dosage for that patient.  *Id.*  Following the alleged increase in Dr. Schlifstein's prescriptions, Dr. Schlifstein was assigned fewer Speaker Programs.  Ind. ¶ 106.  He had only two in June 2015, and his Speaker Program assignments soon ended entirely.  *Id.*

## C.    The Government's Wide-Ranging Indictment

Dr. Schlifstein was indicted along with four other doctors on March 15, 2017.  The wide-ranging Indictment purports to cover the participation of five doctors, with different specialties, in

"300 Speaker Programs from in or about November 2012 through in or about March 2016." Ind. ¶¶ 4, 7-11. The Indictment does not charge any purported non-doctor co-conspirators. The Indictment charges Dr. Schlifstein with four counts: conspiracy to violate the Anti-Kickback Statute (the "AKS") (Count One), violation of the AKS (Count Two), conspiracy to commit honest services wire fraud (Count Three), and wrongful disclosure of individually identifiable health information (Count Eight).

## ARGUMENT

This Court may dismiss an indictment for failing to state an offense. Fed. R. Crim. P. 12(b)(3)(B). To state an offense, an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "An indictment that does not set out all of the essential elements of the offense charged is defective." *United States v. Gonzalez*, 686 F.3d 122, 127 (2d Cir. 2012) (citations omitted). This standard applies to all elements of an offense, regardless of whether an element of a charge offense is implicit or explicit. *United States v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000).

A charged offense that fails to allege essential elements of the charged offense is subject to dismissal. *Id.* at 88-89. An indictment must "contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *Id.* at 92 (quoting *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999)). "[F]or an indictment to fulfill the functions of notifying the defendant of the charges against him and of assuring that he is tried on the matters considered by the grand jury, the indictment must state some fact specific enough to describe a particular criminal act, rather than a type of crime." *Id.* at 93. The failure to allege the essential elements of the charged crimes violates the Fifth and Sixth Amendments. *Id.* at 92.

## I.    THE INDICTMENT AGAINST DR. SCHLIFSTEIN SHOULD BE DISMISSED

### A.    The Conspiracy Counts Should Be Dismissed Because the Indictment's Allegations Do Not Establish an Agreement

The crux of the Indictment appears to be that Dr. Schlifstein prescribed Subsys only because he received speaker fees from Insys.  The problem is that the Indictment lacks allegations to support such a theory.  It pleads no agreement between Dr. Schlifstein and Insys requiring Dr. Schlifstein to prescribe Subsys in exchange for speaker fees.  Absent an agreement to engage in unlawful activity, the Indictment fails to allege a conspiracy to violate the Anti-Kickback Statute or to commit honest services fraud.  As a result, both Counts One and Three must be dismissed.

It is axiomatic that "[t]he essence of conspiracy is agreement."  *United States v. Torres*, 604 F.3d 58, 65 (2d Cir. 2010) (citations omitted); *see also United States v. Rosenblatt*, 554 F.2d 36, 38-39 (2d Cir. 1977) (the essential element of a conspiracy is an agreement among co-conspirators as to the object of the conspiracy; a "meeting of minds" is required).  Thus,  "to convict a defendant of the crime of conspiracy, the government must show that two or more persons entered into a joint enterprise for an unlawful purpose, with awareness of its general nature and purpose."  *Torres*, 604 F.3d at 65.

The Indictment charges Dr. Schlifstein with conspiracy to violate the Anti-Kickback Statute and conspiracy to commit honest services fraud.  At a minimum, then, the Indictment must allege an agreement—a "meeting of the minds"—between Dr. Schlifstein and another person to knowingly engage in the unlawful purpose.  It does not.

The Indictment identifies no agreement between Dr. Schlifstein and Insys that tied Subsys prescriptions to Speaker Program assignments.  It quotes from a number of internal Insys communications that, it claims, demonstrate there was such an agreement.  But the Indictment never alleges that Dr. Schlifstein was made aware of any of these internal communications, and it

offers no factual allegations that the substance of any of these communications was ever passed on to Dr. Schlifstein. For example, the Indictment alleges that Insys employees "calculated the ratio of return on investment ("ROI") for each Speaker," Ind. ¶ 31, and that one Insys employee emailed another to ask, "Where is the ROI," Ind. ¶ 32.b. But the Indictment does not allege that Dr. Schlifstein was aware of these or any other internal Insys communications.

The Indictment identifies only one actual agreement between Dr. Schlifstein and Insys— the Speaker Agreement, which described Dr. Schlifstein's responsibilities with respect to the Speaker Programs. Ind. ¶ 27. The Agreement required Dr. Schlifstein to "continue to make all decisions regarding treatment, prescribing, administration, or dispensing . . . solely in accordance with [his] independent judgment," and "such decisions shall not be affected by this Agreement, the payments made hereunder or the relationship created hereby." *Id.* No other agreements appear in the Indictment.

Because the Indictment offers no allegations of such a "meeting of the minds" between Dr. Schlifstein and Insys personnel to engage in either illegal purpose, Counts One and Three must be dismissed.

**B.    Counts One and Two Should Be Dismissed Because the Allegations Do Not Show Dr. Schlifstein Received Remuneration in Exchange for Prescriptions**

Count One (conspiracy to violate the Anti-Kickback Statute) and Count Two (violation of the Anti-Kickback Statute) must be dismissed because the Indictment fails to allege that Dr. Schlifstein received remuneration in the form of Speaker Program fees in exchange for prescribing Subsys, and it therefore fails to plead a necessary element. In fact, the Indictment contradicts such a quid-pro-quo claim.

Count Two accuses Dr. Schlifstein of violating the Anti-Kickback Statute, which prohibits "knowingly and willfully solicit[ing] or receiv[ing] any remuneration (including any kickback,

bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind . . . in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program."  42 U.S.C. § 1320a–7b(b)(1).  The AKS violation is also the object of the Count One conspiracy claim.  Ind. ¶ 152.  "[T]he AKS forbids offering, paying, soliciting, or receiving kickbacks in exchange for recommending drugs covered by [federal health care programs]."  *United States v. TEVA Pharm. USA, Inc.*, No. 13 CIV. 3702 (CM), 2016 WL 750720, at *16 (S.D.N.Y. Feb. 22, 2016) (evaluating the Anti-Kickback Statute, and discussing facts relating to honoraria and speakers programs).  A proper allegation of an AKS violation requires allegation of "the existence of a quid pro quo."  *State v. MedImmune, Inc.*, --- F. Supp.3d ---, 2018 WL 6567648, at *5 (S.D.N.Y. Sept. 28, 2018); *see also U.S. v. Krikheli*, 461 Fed.Appx. 7, 11 (2d Cir. 2012) (approving jury instructions in AKS case that stated "the prosecution had to prove that the remuneration was offered or paid as a quid pro quo").

The Indictment's allegations against Dr. Schlifstein center on the charge that he received bribes or kickbacks from Insys in exchange for prescribing Subsys to his patients.  In an attempt to show a relationship between the Speaker Programs and Dr. Schlifstein's prescribing activity, the Indictment lists facts related to how many Speaker Programs Insys assigned to Dr. Schlifstein relative to the volume of Subsys prescriptions by Dr. Schlifstein.  The Speaker Programs and prescriptions the Indictment identifies, however, even if proved true, would not show such a relationship between the Speaker Program fees and Dr. Schlifstein's prescriptions of Subsys and would fall far short of demonstrating the necessary direct link.

The Indictment acknowledges that Dr. Schlifstein was prescribing Subsys to patients before he first became involved in the Speaker Program.  Ind. ¶ 96.  According to the allegations,

Dr. Schlifstein became interested in holding Speaker Programs of his own in October 2013, more than a year and a half after Subsys entered the market. Ind. ¶ 91. At that point, he already had prescribed Subsys to nine of his patients. Ind. ¶ 96. Insys signed him up as a speaker in February 2014, and he held his first Speaker Program the following month. Ind. ¶ 95. After he began his participation in the Speaker Program, his prescriptions of Subsys "did not increase substantially." Ind. ¶ 98.

By the end of the second quarter of 2015, Dr. Schlifstein had allegedly increased his prescriptions. Ind. ¶ 105. But despite alleging that Dr. Schlifstein prescribed more Subsys, the Indictment acknowledges that Dr. Schlifstein was assigned *fewer* Speaker Programs. Ind. ¶ 106. He had only two in June 2015, and his Speaker Program assignments soon ended entirely. *Id.*

The facts alleged in the Indictment demonstrate that Dr. Schlifstein's prescriptions and his participation in Speaker Programs did not coincide. They rose and fell at different times and with no pattern that would show an agreement to prescribe in exchange for Speaker Programs. Indeed, for this reason, ***even if the Indictment alleges a correlation between speaker fees and increased Subsys prescriptions as to the other defendants, the Indictment does not allege such a correlation as to Dr. Schlifstein, never mind the necessary quid-pro-quo. In fact, the Indictment explicitly contradicts such a link.***

Absent this necessary link, the Indictment fails to plead the AKS violation because receipt of speaker fees is entirely consistent with the AKS and its implementing regulations. The existence of such speaker programs, and payment of honoraria to the doctors who speak at them, are inherently lawful activities. *See* 42 U.S.C. § 1320a–7b(b)(3)(E) (allowing for regulations to specify "payment practice[s]" to which the AKS "shall not apply"); 42 C.F.R. § 1001.952(d) (regulations defining "personal services . . . contracts" as one of the permissible "payment

practice[s]").  Thus, the Indictment must include allegations that **Dr. Schlifstein specifically** received payments under circumstances that fall outside the AKS safe harbors.  The Indictment fails to set forth any such allegation—and, indeed, fails to allege that Dr. Schlifstein *agreed* to receive payments not permitted under the AKS safe harbors—and thus both Count One and Count Two must be dismissed.

### C.    Count Three Should Be Dismissed Because The Indictment Presents No Factual Allegations That Dr. Schlifstein Intended To Or Actually Did Defraud Any Patient

Count Three, which charges that Dr. Schlifstein engaged in a conspiracy to commit honest services fraud, also must be dismissed for the independent reason that the Indictment fails to include facts that, even if true, would establish the underlying offense.

To state the offense of conspiracy to commit honest services fraud, the Indictment must allege the following elements of honest services fraud:

> (1) a scheme or artifice to defraud; (2) for the purpose of knowingly and intentionally depriving another of the intangible right of honest services as thus defined; (3) where the misrepresentations (or omissions) made by the defendants are material in that they have the natural tendency to influence or are capable of influencing the employer to change its behavior; and (4) use of the mails or wires in furtherance of the scheme.

*United States v. Rybicki*, 354 F.3d 124, 147 (2d Cir. 2003) (en banc).  Thus, under 18 U.S.C. § 1346, the Indictment must allege that the defendant participated in a scheme to "deprive another of the intangible right of honest services."

Because the honest services fraud statute primarily applies to acts of public officials, the Supreme Court has imposed additional requirements on the Government when it seeks to charge a private individual with a violation.  *See Skilling v. United States*, 561 U.S. 358, 399-402 (2010) (explaining historical use of statute).  For allegations of honest services fraud in the private sector, the Supreme Court has held that breach of fiduciary duty is a required element of the offense.  *See*

*id.* at 407 (stating that the "vast majority of the honest-services cases involved offenders who, in violation of a fiduciary duty, participated in bribery or kickback schemes"); *United States v. Halloran*, 821 F.3d 321, 337-38 (2d Cir. 2016) (recognizing that *Skilling* required a violation of fiduciary duty as another element of honest services fraud); *United States v. Nayak*, 769 F.3d 978, 981 (7th Cir. 2014) (*Skilling* held that "the violation of a fiduciary duty" was a prerequisite to an honest-services fraud conviction); *United States v. Milovanovic*, 678 F.3d 713, 721 (9th Cir. 2012) (en banc) ("In light of the Supreme Court's decision in *Skilling*, the parties agree that a breach of fiduciary duty is a required element of honest services fraud under §§ 1341 and 1346."). The Indictment fails to state numerous of these essential elements.

*First*, Count Three must be dismissed because the Indictment fails to adequately allege a scheme or artifice to defraud. Here, no trick, deceit, deception or swindle by Dr. Schlifstein to defraud patients in prescribing Subsys is alleged. Nowhere in the Indictment is a factual allegation to support a claim that Dr. Schlifstein intended to or actually did defraud any patient through deception, material misrepresentation or material omission, or that he intended to harm any patient. The Indictment offers no factual allegation that any of Dr. Schlifstein's prescriptions for Subsys constituted improper care for any of his patients. Even where the Indictment alleges that Dr. Schlifstein prescribed Subsys to new patients, it does not allege that any of these patients were improper candidates for Subsys. *See, e.g.*, Ind. ¶ 104. Thus, the Count fails to adequately allege a scheme or artifice to defraud, and should be dismissed as defective.

*Second*, Count Three must be dismissed for the independent reason that the Indictment fails to allege any material misrepresentations or material omissions. A scheme to defraud requires that there be a material misrepresentation or omission. *See Neder v. United States*, 527 U.S. 1, 25 (1999); *United States v. Pierce*, 224 F.3d 158, 165 (2d Cir. 2000); *Rybicki*, 354 F.3d at 147. The

Indictment does not allege Dr. Schlifstein made any material misrepresentation or material omission to patients concerning Insys' payments to him for conducting Speaker Programs. Indeed, there is no allegation that Dr. Schlifstein had any duty to disclose to patients those Insys payments—because he had none. Rather, the Indictment summarily charges a deprivation of some patients' intangible rights to honest doctors' services, without alleging any material misrepresentation, or material omission, or any duty to disclose by Dr. Schlifstein, which is the heart of any fraud claim. *See United States v. Klein*, 476 F.3d 111, 114 (2d Cir. 2007) ("The materiality of the misleading conduct or speech is . . . at the heart of the word 'fraud.'").

Even if Dr. Schlifstein had such a duty to disclose, the Indictment does not allege that Dr. Schlifstein's failure to do so harmed his patients. As the Eighth Circuit has held, harm to patients from a material omission or misrepresentation is required. In *United States v. Jain*, 93 F.3d 436 (8th Cir. 1996), the defendant psychologist solicited and received referral payments from a psychiatric hospital and was convicted of honest services fraud. But the Eight Circuit reversed Jain's convictions for honest services mail fraud, where there was no evidence that patients received substandard medical care or that Jain intended to harm any patient through any material nondisclosure. *Id.* at 442. The court held that "[t]he essence of a scheme to defraud is an intent to harm the victim. When there has been no actual harm, the government must produce evidence independent of the alleged scheme to show the defendant's fraudulent intent." *Id.* (quotation marks omitted). Notably, this Eighth Circuit decision pre-dates the Supreme Court's decision in *Skilling*, which only serves to underscore the requirement of breaching a duty owed to the patient, as discussed *infra*. Absent an allegation that Dr. Schlifstein's participation in the Speaker Program harmed his patient—which is not present here—the Indictment fails to allege this essential element.

*Finally*, Count Three must be dismissed because the Indictment fails to allege a breach of fiduciary duty. *See Halloran*, 821 F.3d at 337 (citing *Skilling*, 561 U.S. at 368). As an initial matter, the Indictment fails to allege any such duty owed by Dr. Schlifstein to his patients. Even if it did, the Indictment recognizes that doctors prescribing and patients taking medications like Subsys must follow certain procedures. *See, e.g.*, Ind. ¶ 16 ("Only patients who had enrolled in the TIRF REMS Program could be prescribed TIRF products, including the Fentanyl Spray."). These programs require the patients—in addition to the doctors—make informed decisions as to the risks and benefits of Subsys. The Indictment does not allege that Dr. Schlifstein or any of his patients failed to abide by these requirements.

Further, when an FDA-approved medication is involved, a breach of fiduciary duty does not occur unless the medication is prescribed without regard to patient need and contrary to a physician's duty to exercise reasonable medical judgment. Because the Indictment never alleges that Dr. Schlifstein prescribed Subsys to patients who did not need it, the Indictment fails to allege a breach of fiduciary duty, as required to state the offense of conspiracy to commit honest services fraud, and Count Three must be dismissed.

**D.    Count Eight Should Be Dismissed Because The Allegations In The Indictment Do Not Establish That Dr. Schlifstein Provided Patient Information To An Unauthorized Person**

Count Eight of the Indictment also must be dismissed as to Dr. Schlifstein because the Indictment fails to allege facts sufficient to state an offense for violation of 42 U.S.C. § 1320d-6(a)(3), which prohibits knowingly "disclos[ing] individually identifiable health information to another person . . . without authorization." 42 U.S.C.A. § 1320d-6(a)(3).

The Indictment alleges that Dr. Schlifstein "willfully and knowingly, without authorization, disclosed individually identifiable health information relating to another person." Ind. ¶ 168. That allegation is not sufficient to state a violation of 42 U.S.C. § 1320d-6, which

allows for various exceptions. *See ACA Int'l v. FCC*, 885 F.3d 687, 712 (D.C. Cir. 2018). Doctors may make such disclosures in circumstances including "treatment, payment, or health care operations," or when they disclose the information to a "covered entity or a health care provider for the payment activities of the entity that receives the information." 45 C.F.R. § 164.506(c). Insys is a "health care provider" under HHS regulations because it "manufactured, marketed, and sold" Subsys. Ind. ¶ 6; 45 C.F.R. § 160.103. The Indictment only alleges that Dr. Schlifstein disclosed protected information to "another person"—it fails to allege that he disclosed it to a person who was not authorized to receive it pursuant to statute or regulation. This is particularly the case because the Indictment alleges only that Dr. Schlifstein disclosed only very limited information to the Insys representative. Ind. ¶¶ 94, 168. Moreover, the Indictment fails to allege any particular patient names or appointment times that Dr. Schlifstein revealed, thereby failing to provide Dr. Schlifstein with the "factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000). Count Eight should therefore be dismissed.

## II.    IN THE EVENT THE INDICTMENT IS NOT DISMISSED, DR. SCHLIFSTEIN IS ENTITLED TO A BILL OF PARTICULARS, *BRADY* MATERIAL, A PRETRIAL DISCLOSURE SCHEDULE, AND SEVERANCE

In addition to his motion to dismiss, Dr. Schlifstein respectfully requests (1) a bill of particulars; (2) *Brady* material; (3) an appropriate schedule for turn-over of key information before trial; and (4) severance. Dr. Schlifstein also joins all co-defendants' motions not inconsistent with this motion.

### A.    The Government Should Provide a Bill of Particulars

Defendants served a demand for a bill of particulars on the Government by letter dated June 26, 2018. The government responded by letter dated September 10, 2018, in which it claimed that it need not disclose the information and instead referred back to broad allegations in the

Indictment and broad categories of discovery that do not reveal the particulars.  The Government should be ordered to provide the bill of particulars.

In response to Dr. Schlifstein's demand for a bill of particulars, the Government stated that it "is not required to provide an itemized list of, for example, every Speaker Program that constituted a sham or a mere social gathering."  The Government likewise refused to provide a list of each instance when a defendant allegedly prescribed Subsys where not medically appropriate, and to identify each patient who was allegedly deprived of the honest services.  In each instance, the Government referred Dr. Schlifstein to the voluminous production of discovery material.  And, when asked for the specific patients whose information was wrongly disclosed and the date of the disclosure, the Government simply referred Dr. Schlifstein to Paragraph 74 of the Indictment, which contains none of the requested information.

The Government's responses to these demands were uninformative and inadequate.  The Second Circuit has repeatedly held that "[a] bill is appropriate to permit a defendant 'to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.'" *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (quoting *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987)).  "[I]n complex conspiracy cases like this one, the potential for unfair surprise and the difficulty of preparing a defense are amplified" and necessitate a bill of particulars.  *United States v. Rajaratnam*, 09-CR-1184, 2010 WL 2788168, at *2 (S.D.N.Y. July 13, 2010).

The Government's responses, pointing Dr. Schlifstein to vague statements in the Indictment or tens of thousands of pages of discovery materials, do not "enabl[e] him to prepare for trial."  *See Davidoff*, 845 F.2d at 1154.  "It is no solution to rely solely on the quantity of

information disclosed by the government; sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars." *United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000) (citations omitted); *see also Bortnovsky*, 820 F.2d at 575 ("The Government [does] not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided."). Where, as here, the circumstances necessitate a bill of particulars, "it is of no consequence that the requested information would have required the disclosure of evidence or the theory of the prosecution." *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998).

The circumstances here meet the standard for compelling the Government to provide a sufficient bill of particulars. *See* Fed. R. Crim. P. 9(f) (providing that a "court may direct the government to file a bill of particulars"). Thus, this Court should order the Government to meet its obligation and file a bill of particulars.

### B.    The Government Should Provide *Brady* Material

Likewise, the Government thus far has fallen far short of its obligation to provide *Brady* material to Dr. Schlifstein.

Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, the Government must "disclose material information that is 'favorable to the accused, either because it is exculpatory, or because it is impeaching.'" *United States v. Rodriguez*, 496 F.3d 221, 225 (2d Cir. 2007) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999)). These disclosures must be "sufficiently specific and complete to be useful," and be made "in sufficient time that the defendant will have a reasonable opportunity to act upon the information efficaciously." *Id.* at 226 (citation omitted). The Government is required produce exculpatory and impeachment material relating to both testifying and non-testifying witnesses. *United States v. Jackson*, 345 F.3d 59, 70 (2d Cir. 2003).

To date, the Government has provided only summaries of certain witness interviews that the Government has conducted, but these summaries do not provide the context for witnesses'

16

statements, the questions they were answering, the full explanations they gave, or the particular phrasing they used.  The summaries thus necessarily omit critical information from these witness statements.

The Government should therefore be required to provide Dr. Schlifstein with verbatim transcripts of all *Brady* witness interviews in the Government's possession.

### C.    The Court Should Set A Scheduling Order Consistent With The Complexity Of This Case

Due to the complexity and volume of discovery in this case, Dr. Schlifstein requests access to key information within a reasonable time before trial.  He therefore proposes the following dates for the government's disclosures:

1.    Preliminary, non-binding list of government trial witnesses 90 days before the trial date;

2.    Preliminary, non-binding list of government trial exhibits and copies of the marked exhibits 90 days before the trial date;

3.    Government disclosure of any expert notice 90 days before trial;

4.    Government 404(b) letter 90 days before trial;

5.    Government requests to charge 90 days before trial;

6.    Government disclosure of 18 U.S.C. § 3500 material 75 days before trial;

7.    A final government list of trial witnesses 30 days before the trial date; and

8.    A final government list of trial exhibits and copies of any marked exhibits not previously provided 30 days before the trial date.

### D.    Dr. Schlifstein's Trial Should Be Severed From His Co-Defendants' Trial

Finally, this Court should sever Dr. Schlifstein's trial from that of his co-defendants.  Dr. Schlifstein's trial should be severed for two reasons: misjoinder under Federal Rule of Criminal

17

Procedure 8(b), and prejudicial joinder under Rule 14.  The Indictment alleges no facts connecting Dr. Schlifstein to a conspiracy involving the co-defendant doctors.  The Indictment alleges only that Dr. Schlifstein attended a few Speaker Programs at which his medical office partner spoke.  Ind. ¶ 90.  Nowhere does the Indictment allege that Dr. Schlifstein planned any of the co-defendants' Speaker Programs or received any remuneration from them.  At most, the Indictment alleges multiple separate conspiracies between Insys and each defendant (and, indeed, it fails to allege even that).  Because the Indictment cannot be read to allege that Dr. Schlifstein participated in a single conspiracy involving the other defendants, Dr. Schlifstein's trial should be severed due to misjoinder.  *See* Fed. R. Crim. P. 8(b).

Additionally, allowing testimony at Dr. Schlifstein's trial regarding the alleged conspiracies of the other defendants would unfairly prejudice Dr. Schlifstein.  Among other things, the Indictment does not allege that Dr. Schlifstein used narcotics, stockpiled Subsys, fraudulently allowed an Insys representative to take an online test in his name, or gave false statements to the FBI, but it does make such allegations against other defendants.  *See, e.g.*, Ind. ¶¶ 39(a), 110, 122-23, 150.  And, as explained *supra*, § I.B, the Indictment does not allege a correlation between speaker fees and increased Subsys prescriptions as to Dr. Schlifstein.  Presenting evidence of those allegations—which would not be admissible against Dr. Schlifstein—at Dr. Schlifstein's trial would deprive him of a fair trial.  His trial should thus be severed from his co-defendants'.  Fed. R. Crim. P. 14.

## CONCLUSION

For the reasons stated above, Dr. Schlifstein respectfully requests that this Court dismiss the four counts against him.  In the alternative, Dr. Schlifstein moves for a bill of particulars, *Brady* material, a scheduling order, and severance, and he joins all co-defendants' motions not inconsistent with this motion.

Dated: New York, New York
        January 22, 2019

Respectfully submitted,

  /s/ Alex Spiro

Alex Spiro

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
212-849-7000
alexspiro@quinnemanuel.com

*Attorney for Todd Schlifstein*