Case 1:18-cr-00217-KMW   Document 115   Filed 05/14/19   Page 1 of 5



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 14, 2019

**By ECF**

The Honorable Kimba M. Wood
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Gordon Freedman et al.*, 18 Cr. 217 (KMW)

Dear Judge Wood:

    The Government writes in response to the April 18, 2019 letter of defendant Dialecti Voudouris (Dkt. No. 108, hereinafter "Voudouris Ltr.") seeking severance from co-defendant Gordon Freedman pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure due to the filing of a separate indictment against Dr. Freedman in *United States v. Gordon Freedman*, 19 Cr. 249 (the "New Freedman Indictment"), a case that is assigned to Judge Alison Nathan. For the reasons described below, the filing of the New Freedman Indictment provides no additional basis for Voudouris's trial to be severed from the trial of Freedman. The defendant's pending motion for severance – along with pending severance motions filed by her co-defendants – should be denied for all of the reasons stated in the Government's opposition brief (Dkt. No. 95), and the filing of the New Freedman Indictment does nothing to change the analysis.

<div align="center">Background</div>

    The operative Indictment in the above-captioned case charges Freedman, Voudouris, Goldstein, and Schlifstein[1] in Count One with participating in a conspiracy to violate the Anti-Kickback Statute; in Count Two with violating the Anti-Kickback Statute; and in Count Three with participating in a conspiracy to commit honest services wire fraud. (Dkt. No. 1). Voudouris and Goldstein are each also charged with aggravated identity theft, and Voudouris, Goldstein and Schlifstein are also charged with wrongful disclosure of individually identifiable health information. The charges in the Indictment generally relate to the defendants' receipt of Speaker Program fees from Pharma Company-1 in return for prescribing large volumes of a fentanyl-based spray manufactured by Pharma Company-1 called Subsys (identified as the "Fentanyl Spray" in the Indictment).

---

[1] Defendant Alexandru Burducea pleaded guilty to Count One of the Indictment on February 14, 2019.

The New Freedman Indictment charges Freedman with fifteen counts of intentionally and knowingly distributing controlled substances, in particular fentanyl, oxycodone, and oxymorphone to a particular patient (identified as "Patient-1" in the New Freedman Indictment). (New Freedman Indictment at ¶¶ 7-8). In addition, Freedman is charged with causing the death of Patient-1 as a result of a dose of fentanyl prescribed on or about April 13, 2017. (New Freedman Indictment ¶ 9-12). Notably, the fentanyl product that is alleged to have caused Patient-1's death is not Subsys but instead a different fentanyl product.

All defendants moved to sever their trials from those of their codefendants pursuant to Rule 8(b).[2] Certain defendants also moved to sever under Rule 14(a) in order to provide relief from prejudicial joinder. As Voudouris acknowledges in her April 18, 2019 letter, she did not initially move for severance under Rule 14(a). (Voudouris Ltr., at 1 n.1).

<div align="center">Applicable Law</div>

As the Government set forth in its opposition to the defendants' motion for severance, pursuant to Rule 14(a), "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). "Joint trials are often particularly appropriate in circumstances where the defendants are charged with participating in the same criminal conspiracy." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003).

A defendant seeking severance under Rule 14 bears the "extremely difficult burden," *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989), of showing that prejudice from the joinder would be so extreme as to deny him or her a constitutionally fair trial. *See United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993). Defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials. *Zafiro*, 506 U.S. at 540. Indeed, it is well settled that "differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." *United States v. Carson*, 702 F.2d 351, 366 (2d Cir. 1983); *United States v. Torres*, 901 F.2d 205, 230 (2d Cir. 1990); *see also United States v. Zackson*, 6 F.3d 911, 922 (2d Cir. 1993). The Supreme Court has instructed that district courts should grant severance under Rule 14 only when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." 506 U.S. at 539. Consequently, "[t]he principles that guide the district court's consideration of a motion for severance usually counsel denial." *Id.*

Finally, courts have repeatedly recognized that any potential prejudice caused by a joint trial can be effectively mitigated by instructions to the jury that they must consider separately each individual defendant and each charge, and consider only the evidence that has been admitted against each defendant. *See Zafiro*, 506 U.S. at 540-41; *United States v. Rittweger*, 524 F.3d 171, 179 (2d Cir. 2008); *United States v. O'Connor*, 650 F.3d 839, 859 (2d Cir. 2011).

---

[2] The defendants also moved to dismiss the Indictment, for a bill of particulars, for *Brady* material, and for a scheduling order. All of the defendants' motions remain pending.

The New Freedman Indictment Provides No Additional Grounds for Severance

Freedman is named in a separate Indictment in a case before a separate Judge regarding separate conduct. The death of Patient-1 that is alleged in the New Freedman Indictment is based on an April 2017 prescription that post-dates the time period of the conspiracies charged in the operative Indictment, which are alleged to have ended in or about March 2016. The Government has informed defense counsel that it does not intend to offer at trial in this case proof during its case-in-chief regarding the conduct alleged in the New Freedman Indictment[3], and in particular the fact that Freedman caused the death of a patient by prescribing a different fentanyl product. Nor does the Government intend to offer this evidence under Rule 404(b). However, if, for example, Freedman were to testify and to make certain statements regarding the appropriateness of his prescribing of opioids more generally, then the Government would seek to cross-examine Freedman regarding his care of Patient-1, and in particular the fact that his prescriptions of a different fentanyl product caused Patient-1's death.

The filing of the New Freedman Indictment does nothing to support severance of Voudouris from Freedman for multiple reasons. *First*, as an initial matter while Voudouris' April 18, 2019 letter states that Freedman's counsel has advised that Freedman is likely to testify and "expects such testimony to include Dr. Freedman's treatment of patients was medically appropriate," (Voudouris Ltr., at 2), the Government plans to move *in limine* in advance of trial seeking a ruling from the Court regarding what direct testimony from Freedman would open the door to the Government cross examining Freedman regarding the death of Patient-1. Accordingly, whether Freedman's testimony would, in fact, open the door to cross examination regarding Patient-1's death will be determined by pretrial motions and may moot the issue in advance of trial. Indeed, if a pretrial ruling indicates that certain direct testimony from Freedman would open the door to cross examination regarding Patient-1's death, Freedman may choose to avoid testifying in that fashion.

*Second*, and most significantly, even if the Government did explore Patient-1's death on cross examination in order to address Freedman's claims that he treats patients in a medically appropriate manner, in particular with respect to his prescribing of opioids to his patients, any prejudicial spillover that would result to Freedman's co-defendants would be minimal. This is particularly so because the Government would solely be exploring Patient-1's death in order to impeach Freedman's testimony that he treats his patients in a medically appropriate manner. Given that this testimony and evidence would only be adduced during cross-examination, and not during the Government's case-in-chief, the prejudice to Freedman's codefendants would be especially minimal since this evidence would only be used for the limited purpose of impeaching Freedman's claims that he treats his patients in a medically appropriate manner. Indeed, nothing about this line of cross examination would implicate the conduct of Freedman's co-defendants. There would be nothing about this line of cross examination that would in any way suggest to the jury that

---

[3] The Government will likely present evidence at trial that Freedman did prescribe Subsys to the individual identified as Patient-1 in the New Freedman Indictment. However, the Government does not intend during its case-in-chief to inform the jury that Patient-1 later died from a different fentanyl product prescribed by Freedman. In the event Freedman were the only remaining defendant in this case by the time of trial, the Government may reevaluate its position.

Freedman's co-defendants were in any way responsible for Freedman's conduct. Moreover, none of Freedman's co-defendants worked at his medical practice, or played any role in his prescribing decisions, as the jury will quickly learn from the evidence presented during the Government's case-in-chief. In addition, the fentanyl product that Freedman prescribed that resulted in Patient-1's death was not Subsys, only further minimizing any potential prejudice to Freedman's codefendants.

Indeed, even where a defendant is expected to testify in a manner that might be potentially harmful to his codefendants' defenses, that would not typically create grounds for severance. *See, e.g., United States v. Gane*, No. 10-CR-90S, 2010 WL 4962955, at *2 (W.D.N.Y. Nov. 24, 2010) ("[T]o the extent that Gane relies on the mere fact that his co-defendants will attempt to deflect blame onto him, that fact standing alone does not require severance . . . Indeed, the Supreme Court has noted that few cases are reversed for failure to grant severance on grounds of mutually antagonistic or irreconcilable defenses, likely because defendants are unable to show the requisite level of prejudice." (citing *Zafiro,* 506 U.S. at 538; *United States v. Haynes,* 16 F.3d 29, 31–32 (2d Cir.1994); *United States v. Schlegel,* No. 06–CR–550, 2009 WL 3837305, at *4 (E.D.N.Y. Nov. 16, 2009) (noting that the possibility of co-defendants placing the blame on each other is not the type of antagonism that requires severance))). Here, by contrast, the defendants are all expected to have significantly the same defense to the charges – that the lucrative Speaker Program fees they received from Pharma Company-1 did not induce them to prescribe Subsys and that, instead, they prescribed Subsys solely because it was appropriate in their medical judgment – and nothing about Freedman's anticipated testimony or the potential cross examination regarding the death of Patient-1 is in any way antagonistic to Freedman's codefendants' defenses.

*Third*, and finally, in the event that the Government did explore the death of Patient-1 during cross-examination of Freedman, the Government would consent to an appropriate limiting instruction from the Court. Such a limiting instruction reminding the jury that they must consider separately each individual defendant, and consider only the evidence that has been admitted against each defendant, would more than account for any minimal prejudice. *See Zafiro*, 506 U.S. at 540-41; *Rittweger*, 524 F.3d at 179; *United States v. O'Connor*, 650 F.3d 839, 859 (2d Cir. 2011). As this Court is aware, juries are presumed to appropriately follow a Court's limiting instructions, and there is no reason to think that would not be the case in this instance. *See United States v. Snype*, 441 F.3d 119, 129–30 (2d Cir. 2006) ("[T]he law recognizes a strong presumption that juries follow limiting instructions.").

Accordingly, for the reasons stated above and all of the reasons previously stated in the Government's opposition to the defendants' pretrial motions (Dkt. No. 95), the defendants' motions to sever should be denied and Freedman, Voudouris, Goldstein and Schlifstein should be tried together.

    Respectfully submitted,

    GEOFFREY S. BERMAN
    United States Attorney

by:    /s/
    Noah Solowiejczyk/ David Abramowicz
    Assistant United States Attorneys
    (212) 637-2473/6525

cc:    All defense counsel (by ECF and email)