UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

UNITED STATES OF AMERICA

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  May 19, 2020
```

18-CR-217 (KMW)
**OPINION AND ORDER**

       v.

TODD SCHLIFSTEIN, ALEXANDRU
BURDUCEA, and DIALECTI VOUDOURIS,

              Defendants.
---------------------------------------------------------------X

KIMBA M. WOOD, District Judge:

        The Government seeks restitution from Todd Schlifstein, Alexandru Burducea, and

Dialecti Voudouris (collectively, "defendants"),  each of whom pleaded guilty to conspiring to

violate the Anti-Kickback Statute, Title 42, United States Code, Section 1230a-7b(b)(1), in

violation of Title 18, United States Code, Section 371.  (ECF No. 276.)  Specifically, the

defendants pleaded guilty to accepting bribes and kickbacks in the form of speaker fees from the

pharmaceutical company Insys Therapeutics ("Insys") in exchange for prescribing Insys's

fentanyl-based pain medication, Subsys.  According to the Government, federal healthcare

programs that reimbursed the costs of Subsys prescribed by the defendants—and thereby

suffered pecuniary losses—are entitled to restitution.

        The Court would need to conduct extensive evidentiary proceedings in order to calculate

the appropriate restitution amounts for each of the defendants.  The total costs the healthcare

programs paid for all Subsys prescriptions written by the defendants is an improper proxy for the

pecuniary losses the programs suffered as a result of the defendants' participation in the

1

conspiracy.  In order to know what pecuniary losses the healthcare programs actually experienced as a direct and proximate result of defendants' conduct, and therefore to order an accurate restitution amount, the Court would need to learn what proportion of the defendants' Subsys prescriptions would have remained unchanged, what proportion would have been replaced with prescriptions for similar drugs, what proportion would have been replaced with prescriptions for cheaper drugs, and what proportion would not have been replaced at all, absent the inducement of speaker fees.  For no lack of diligence or good faith, the Government has not attempted to examine the defendants' prescriptions in this way.  To do so would be exceedingly difficult.

Therefore, the Court declines to order restitution under Section 3663A(c)(3)(B) of the Mandatory Victims Restitution Act ("MVRA"), which provides that the MVRA shall not apply where the court finds that "complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process."  18 U.S.C.S. § 3663A(c)(3)(B).  For the same reason, the Court declines to exercise its discretion to order restitution under the Victim Witness Protection Act ("VWPA"), 18 U.S.C. § 3663(a)(1)(A).

## BACKGROUND

The Court assumes familiarity with the allegations detailed in the indictment in this case. (Indictment, ECF No. 1.)  Briefly, the indictment alleges that the defendants "accepted bribes and kickbacks in exchange for prescribing a potent and highly addictive" Transmucosal Immediate Release Fentanyl ("TIRF") product called Subsys, manufactured by lnsys.  (*Id.* ¶¶ 1, 16.)  lnsys paid the defendants fees for acting as "Speakers" at Insys "Speaker Programs." *(Id.* ¶ 2.)  The "Speaker Programs were touted as educational events at which the Speaker educated

other doctors regarding [Subsys]." *(Id.* ¶ 4.)  According to the Indictment, however, "many of the Speaker Programs [the defendants] conducted were merely social gatherings at high-end restaurants with no educational presentation whatsoever [and] . . . lacked an appropriate audience of peer-level doctors with a professional reason to be educated about [Subsys]."  (*Id.*) Insys selected and compensated the defendants "to induce them to prescribe large volumes of [Subsys]."  (*Id.* ¶ 3.)  The scheme thus operated as follows: Insys paid kickbacks to the defendants in the form of speaker fees for sham Speaker Programs, and, in exchange, the defendants prescribed Subsys to their patients. *(Id.* ¶¶ 1–5.)

Count One of the Indictment charged the defendants with conspiring to violate the Anti-Kickback Statute by participating in that scheme.  Schlifstein, Burducea, and Voudouris pleaded guilty to Count One on June 26, 2019, February 14, 2019, and August 2, 2019, respectively.

At each defendant's sentencing, the Court deferred its decision on restitution in order to receive additional information from the Government.  On March 9, 2020, the Government submitted the present petition for restitution.  The Government's petition seeks $1,446,443 in restitution from Schlifstein, jointly and severally with Insys, Jonathan Roper, and Fernando Serrano; $1,233,036 from Burducea, jointly and severally with Insys, Jonathan Roper, and Fernando Serrano; and $2,087,383 from Voudouris, jointly and severally with Insys, Jonathan Roper, and Fernando Serrano.  The defendants each filed an opposition to the Government's petition on April 22, 2020.  The Government replied on May 1, 2020.

## DISCUSSION

### I.    Restitution Under the Mandatory Victim Restitution Act

Under the MVRA, defendants convicted of certain offenses face mandatory restitution obligations.  As relevant here, a defendant must make restitution to the victim(s) of his criminal

behavior if he was convicted of "an offense against property . . . including any offense committed by fraud or deceit."  18 U.S.C. § 3663A(c)(1)(A)(ii).

The MVRA defines "victim" as "a person directly and proximately harmed a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern."  18 U.S.C. § 3663A(a)(2).

The MVRA does not apply where the process of resolving complex issues of fact related to restitution would complicate or prolong sentencing to an intolerable degree. 18 U.S.C. § 3663A(c)(3)(B); *see United States v. Catoggio*, 326 F.3d 323, 326 (2d Cir. 2003).  "[I]t lies within the sound discretion of the district court to decide whether the factual issues underlying a restitution order are so complex as to unduly burden the sentencing process."  *United States v. Cassidy*, 569 Fed. App'x. 30, 31 (2d Cir. 2014).

As a threshold matter, Burducea and Schlifstein argue that the offense to which they pleaded guilty—conspiracy to violate the Anti-Kickback statute—falls outside the coverage of the MVRA.  Conspiracy to violate the Anti-Kickback statute is not a typical offense against property such as, for instance, robbery or arson.  Thus, whether the MVRA applies here turns on whether the defendants' crime constitutes an offense against property as contemplated by the final clause of Section (c)(1)(A)(ii)—that is, an offense against property "committed by fraud or deceit."  The Government argues that, although neither "fraud" nor "deceit" is an element of the relevant conspiracy offense, the *manner* in which the defendants committed the offense involved fraud and deceit.  *See United States v. Battista*, 575 F.3d 226 (2d Cir. 2009) (declining "to answer the open question of whether the language 'committed by fraud or deceit' in Section

4

3663A(c)(1)(A)(ii) refers to the elements of an offense or the manner in which the defendant commits the offense").  Here, the Court "assume[s] without deciding that a conspiracy under 18 U.S.C. § 371 to violate the Anti-Kickback Statute constitutes an offense against property for purposes of the MVRA."  *United States v. Pikus*, 2015 U.S. Dist. LEXIS 78307, at *2 (E.D.N.Y. June 16, 2015).

The extent to which the defendants' victims were directly and proximately harmed by the defendants' criminal activity implicates a set of even more challenging issues.  The MVRA's direct and proximate causation requirements reflect "Congress's interest in maintaining efficiency in the sentencing process."  *United States v. Reifler*, 446 F.3d 65, 135 (2d Cir. 2006). The MVRA's direct causation requirement promotes efficiency because "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation."  *Id*. at 135 (quoting *Holmes v. Sec. Investor Prot. Corp*., 503 U.S. 258, 269 (1992)).  Likewise, the MVRA's proximate causation requirement promotes efficiency by "limit[ing] a person's responsibility for the consequences of that person's own acts[,] . . . reflect[ing] ideas of what justice demands, or of what is administratively possible and convenient."  *Id*. at 135 (citations and internal quotation marks omitted).

The nature of the defendants' offenses makes the Government's burden to establish causation effectively impossible to shoulder.  The Government has not provided specific information about how it calculated the restitution amounts for defendants.  To the extent the amounts represent the total sum that the healthcare programs paid out for every prescription of Subsys written by defendants during the conspiracy period, that measure is too blunt.  To calculate a restitution amount that reflects the direct and proximate losses the federal healthcare programs suffered as a result of the defendants' conduct, the Government would need to isolate

5

and deduct from the programs' total Subsys reimbursement costs the sum attributable to Subsys prescriptions that the defendants would have written even absent the influence of the speaker fees, as well as the reimbursement costs the programs would have paid for other pain medication defendants would have prescribed in lieu of Subsys if not for the speaker fees defendants received.

The Government states that "defendants would not have prescribed Subsys to their patients if not for the bribe payments they received from Insys" and, one step further, that "but for the bribes, the defendants would not have prescribed a TIRF drug at all." (Gov. Letter at 3, ECF No. 276.) But the Government's conclusion does not follow automatically from the offense to which the defendants pleaded guilty. *See United States v. Pikus*, 2015 U.S. Dist. LEXIS 78307, at *8 (E.D.N.Y. June 16, 2015) ("Fraudulent provision of services was never part of the charged conduct. Kickbacks were. The only even arguable loss to the government that is 'directly caused by the conduct composing the offense' is that the government overpaid by some amount for these services."). In fact, Schlifstein and Voudouris specifically allocuted that Insys induced them to prescribe Subsys "*over other medications*" by rewarding them with speaker fees. (Schlifstein Plea Tr. at 18, ECF No. 127; Voudouris Plea Tr. at 16, ECF No. 133) (emphasis added.)

The Government's conclusion does not follow directly from its proofs, either. The Government relies almost entirely on three graphs to meet its burden of proving direct and proximate loss causation. (See Gov. Letter at Exs. A, B, C.) The graphs reflect correlations between the number of Subsys prescriptions each defendant wrote and the amount of money each defendant received in speaker fees; these correlations promote a strong inference that the defendants wrote some, even most, Subsys prescriptions because they were receiving kickbacks.

But they are not enough to support restitution orders for the total cost the federal healthcare programs paid for *all* Subsys reimbursements.  And any attempt to parse the individual prescriptions that might have stayed the same and those that might have been replaced by a prescription for a different drug had the prescribing doctor not received speaker fees would require a tremendous investment of time and judicial resources.

The defendants each cite specific reasons that the total cost the federal healthcare programs paid to reimburse all Subsys prescriptions during the conspiracy period overstates the losses directly and proximately attributable to defendants' conduct.

Schlifstein states that he prescribed Subsys "long before he was ever involved with the Subsys speaker series" and after he stopped participating in the speaker program.  (Schlifstein Opp. at 3, ECF No. 296.)   He had prescribed other TIRF medications since at least 2010.  "At bare minimum, if not for his participation in the conspiracy, [he] would have prescribed similar TIRF drugs to a significant, unascertainable portion of his patients."  (*Id.*)  The Government counters that "many of Schlifstein's Subsys prescriptions that predate his formal nomination as a Speaker were aimed at securing a place in Insys's Speakers Bureau in the first place."  (Gov. Reply at 10.)  The Government is likely correct, but, understandably, it cannot and does not estimate *how many* is "many."   Similarly, the Government states that the fact "[t]hat Schlifstein had familiarity with the other TIRF drugs but chose to prescribe only one of those drugs in large volumes—Subsys—during the period when Insys was paying him shows, at a minimum, that the bribes influenced a large proportion of his Subsys prescriptions."  (*Id.*).  Again, what constitutes "a large proportion" is unknown and, essentially, unknowable.  Because a precise figure would be impossible to pinpoint, the Government rounds up; it treats "a large proportion" of prescriptions as *all* prescriptions for the purposes of calculating Schlifstein's restitution

obligation.  The Government's decision is reasonable under the circumstances, but yields a sum that is too inexact for the Court to adopt.

Defendant Schlifstein also argues that, if other non-TIRF medications were overlaid onto the prescription amounts visualized in the Government's graph, "there would be minimal, if any differences in the total prescriptions over the course of the conspiracy."  (Schlifstein Opp. at 3.)  The Government is correct to note that non-TIRF drugs are typically less expensive than TIRF drugs.  But by how much is unclear.  The Government does not attempt to calculate the difference between the cost of reimbursing Subsys prescriptions and the cost of reimbursing hypothetical non-TIRF replacement prescriptions; instead, it appears to assume that the healthcare programs would incur zero costs if defendants prescribed zero Subsys.  Again, the Government's approach reflects no lack of integrity or effort.  The Court highlights it simply to emphasize that calculating an accurate restitution amount would be exceptionally time- and resource-intensive.

Voudouris argues that she prescribed Subsys only for on-label treatment of breakthrough cancer pain, and if she had not prescribed Subsys to her cancer patients, she would have prescribed some other, similar medication.  (Voudouris Opp. At 3, ECF No. 294.)  The Government states that Voudouris replaced large volumes of Subsys with lower quantities of Lazanda, a different TIRF medication, when she stopped receiving speaker fees from Insys.  (Gov. Reply at 8 n. 3.)  But from these facts it is reasonable to infer that the healthcare programs were "out of pocket as a result of her participation in the conspiracy" (*id.* at 9) *not* by the total cost of reimbursing her Subsys prescriptions, but by the difference between the cost of her Subsys prescriptions and the lower cost of the alternative TIRF prescriptions she would have

written had she received no kickbacks.  Again, the Government, reasonably, does not attempt to calculate this difference.

Defendant Burducea contends that he did not prescribe TIRF drugs in significant quantities before the conspiracy period because they were a relatively new class of drug, but once he learned about the benefits of Subsys through his affiliation with Insys, he began and continued to prescribe Subsys.  (Burducea Supplemental Opp. at 3, ECF No 298.)  He also contends that he prescribed Subsys not because he was bribed to do so, but because Insys provided the valuable service of assisting with the pre-authorization process.  (*Id.*)  Additionally, he contends that the Government's graph is misleading insofar as it shows a drop-off in Subsys prescriptions when Insys stopped paying speaker fees; in reality, Burducea states, he continued to prescribe Subsys, but did so under the NPI numbers of his nurse practitioners and other doctors.  The Court would need to undertake extensive fact-finding to properly evaluate these contentions.

In sum, it is highly likely, and the Government does not persuasively refute, that defendants would have written some of the same Subsys prescriptions, some prescriptions for comparably priced drugs in lieu of Subsys, and some prescriptions for less expensive drugs in lieu of Subsys during the course of the conspiracy period had they not received speaker fees.  For that reason, the total cost of reimbursing all defendants' Subsys prescriptions is not a proper measure of the actual losses the healthcare programs experienced.  A proper calculation would require a much more fine-grained inquiry.

But "Congress plainly intended that sentencing courts not become embroiled in intricate issues of proof, as it provided that the MVRA is to be inapplicable if the court finds that the determination of complex factual issues related to the cause or amount of the victims' losses

would unduly burden the sentencing process." *Reifler*, 446 F.3d at 136. "Accordingly, the Senate Report stated that cases 'in which the victim's loss is *not clearly causally* linked to the offense, should not be subject to mandatory restitution." *Id.* (quoting Senate Report at 19, reprinted in 1996 U.S.C.C.A.N. at 932). A clear causal link between the purported loss and the defendants' conduct is missing here.

## II.  Restitution Under the Victim Witness Protection Act

In its reply, the Government proposes that the Court order restitution under the VWPA should it determine that restitution is improper under the MVRA. (Gov. Reply at 6.) In contrast to restitution under the MVRA, restitution under the VWPA is discretionary.

The VWPA provides that "[t]he court, when sentencing a defendant convicted of [any] offense under this title . . . may order . . . that the defendant make restitution to any victim of such offense." 18 U.S.C. § 3663(a)(1)(A). The VWPA requires sentencing courts to consider the amount of the loss sustained by the victim as a result of the offense, the defendant's financial resources, the financial needs and earning ability of the defendant and the defendant's dependents, and other factors the court deems appropriate. *Id.* § 3663(a)(1)(B)(i)(I–II); *see United States v. Ben Zvi*, 242 F.3d 89, 99 (2d Cir. 2001). "Aside from the aforementioned differences, the provisions of the VWPA and the MVRA are nearly identical in authorizing an award of restitution." *United States v. Battista*, 575 F.3d 226, 230 (2d Cir. 2009) (quotation marks omitted). In particular, the MVRA and the VWPA share the same causation standard: "i.e., the victim's harm must be 'directly and proximately' caused by the defendant's criminal activity." *United States v. Marino*, 654 F.3d 310, 317 (2d Cir. 2011) (citing 18 U.S.C. § 3663A(a)(2); *id.* § 3663(a)(2)). Thus, restitution is not warranted under the VWPA for the same reason that it is not warranted under the MVRA, and the Court exercises its discretion to deny it.

**III.    Conclusion**

For the foregoing reasons, the Government's petition for restitution from Schlifstein,

Burducea, and Voudouris is denied.

SO ORDERED.

 Dated: New York, New York
          May 19, 2020                                        _____/s/ Kimba M. Wood_____
                                                                          KIMBA M. WOOD
                                                                    United States District Judge